In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00054-CV


______________________________





IN RE: AMY BETTS WEAVER









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Amy Betts Weaver, relator, has filed a petition for writ of mandamus asking this Court to
order the County Court at Law of Panola County to order the transfer of venue of an underlying
family law litigation to Rusk County, Texas. She states that the trial court found that the children
had resided in Rusk County for over six months, thus transfer was mandatory. The parties have
provided a record of various proceedings in this case as attachments to their briefs. 

 There are a number of other matters set out by the parties in connection with the
conservatorship issue and possession, but the sole focus of this proceeding is whether the trial court
abused its discretion by failing to perform its ministerial duty and transfer the proceeding to the
county of residence of the children.

 In order to obtain mandamus relief, the relator must show that the trial court clearly abused
its discretion, and the relator has no adequate remedy by appeal. In re Sw. Bell Tel. Co., 226 S.W.3d
400, 403 (Tex. 2007) (orig. proceeding). A trial court has no discretion in determining what the law
is or applying the law to the facts. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig.
proceeding). 

 Weaver states that because the trial court found the children had resided in Rusk County for
over six months, transfer was mandatory. If the mandatory transfer provision applies in this instance,
mandamus relief is appropriate. Proffer v. Yates, 734 S.W.2d 671, 673 (Tex. 1987) (orig.
proceeding).

 Section 155.201 of the Texas Family Code provides for the mandatory transfer of a
proceeding on a motion to modify as follows:

 (b) If a suit to modify or a motion to enforce an order is filed in the court
having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the
court shall, within the time required by Section 155.204, transfer the proceeding to
another county in this state if the child has resided in the other county for six months
or longer. 


Tex. Fam. Code Ann. § 155.201(b) (Vernon 2008).

 In the divorce decree attached, Weaver, as a joint managing conservator, was authorized to
designate the primary residence of the children "within Panola County, Texas or within the
boundaries of the Tatum Independent School District in Rusk County, Texas." Weaver filed a
motion to transfer alleging that the children had been residents of Rusk County for more than six
months. The father, Sonny Stallings, filed an objection to the motion alleging that the children had
resided with him in Panola County at least sixty-six percent of the time. 

 Even though Weaver alleges the trial court found the children resided in Rusk County for
more than six months, the written order denies the motion to transfer venue, without specifying any
reason for that ruling. The general rule is that in the absence of a request for findings of fact, the
judgment implies all necessary findings to support it, if the proposition is raised by the pleadings and
supported by the evidence. Jones v. Smith, 157 S.W.3d 517 (Tex. App.--Texarkana 2005, pet.
denied). Although the initial motion to modify and transfer alleges that the children had spent six
months in Rusk County, the evidence presented at the hearing was not directly aligned with that
question, and the discussions at trial were directed at desired changes in the domicile of the child. 

 The Legislature has provided direction for courts in making a determination concerning the
length of time a child has resided in a county.

 § 155.203. Determining County of Child's Residence 

 In computing the time during which the child has resided in a county, the
court may not require that the period of residence be continuous and uninterrupted
but shall look to the child's principal residence during the six-month period preceding
the commencement of the suit. 


Tex. Fam. Code Ann. § 155.203 (Vernon 2008).

 In order to prevail, relator must show this Court that the trial court's ruling was an abuse of
discretion and that it failed to perform its ministerial duty. 

 That argument is not supported by the evidence. The divorce decree allowed the
establishment of the children's primary residence in either Panola or Rusk County. The only
evidence presented at the hearing was by the father of the children who testified the children resided
sixty-six percent of the time in Panola County. No other testimony was presented; consequently,
there is no conclusive evidence which would require the trial court to find that the principal
residence of the children was in another county for the necessary six months.

 Accordingly, the trial court did not abuse its discretion by denying the motion to transfer.

 We deny the petition for writ of mandamus. 



 Jack Carter

 Justice


Date Submitted: June 4, 2009

Date Decided: June 5, 2009



charged in the indictment; even then
you cannot convict the defendant unless you further believe that there is other
evidence in the case, outside of the offense charged in the indictment, and then from
all the evidence you must believe beyond a reasonable doubt that the defendant is
guilty.

There was no error in declining to instruct the jury that Bradford was an accomplice as a matter of
law.

 Jester nevertheless contends that the State's grant of immunity to Bradford conclusively
makes him an accomplice. A witness who is indicted for the same offense as the accused, but is
promised immunity in exchange for testifying against the accused, is an accomplice witness as a
matter of law. Bradford was not indicted for the murder of Howell. The fact that Bradford was
granted immunity, standing alone, does not render him an accomplice as a matter of law. See
Moulton v. State, 508 S.W.2d 833, 836 (Tex. Crim. App. 1974). The test requires the evidence to
clearly show that Bradford participated in the crime and could be charged under the same indictment
as Jester. Blake v. State, 971 S.W.2d at 455.

 At oral argument, Jester asked us to adopt a new rule: any witness who is granted immunity
should be deemed an accomplice as a matter of law. We decline to do so. We have found no
authority supporting such a rule, and we discover no sound basis for such a rule. The general policy
behind the accomplice witness rule is that an accomplice is a discredited witness, and his testimony
is to be carefully scrutinized because he may have an interest in the outcome of the trial in which he
is testifying. Hilton v. State, 975 S.W.2d 788, 792 (Tex. App.-Texarkana 1998, pet. ref'd). Many
witnesses are granted immunity for crimes completely unrelated to the case in which they testify. (1) 
A grant of immunity in those instances does not necessarily discredit the witness' testimony in
another proceeding. Moreover, even if the immunity applies to the offense about which a person
testifies, the grant of immunity does not always mean that the recipient of the immunity is guilty of
the crime. The prosecution may have doubts about the accomplice's guilt, but still grant him
immunity in order to induce him to give testimony that the prosecution might not otherwise be able
to procure. 

 The accomplice witness corroboration requirement properly serves the interests of justice by
protecting the interest of the defendant while preserving competent evidence for use by the trier of
fact. In this case, Jester was able to fully explore Bradford's credibility and bias on cross-
examination, and to put before the jury any facts that would tend to establish ill feelings, bias, motive
to testify, or vulnerable relationship with the State. See McDuff v. State, 939 S.W.2d 607, 618 (Tex.
Crim. App. 1997). The current rule protects the defendant by subjecting the testimony at issue to
the crucible of adversarial testing, including full and effective cross-examination. See Davis v.
Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The jury is completely and fully
instructed on the accomplice witness rule, but is left to judge for itself the credibility of the evidence
and the soundness of the arguments presented. This is nothing more than the jury's role on any
disputed fact question. Absent conclusive evidence, this issue is inappropriate for determination
other than by the trier of fact. The current test also avoids arbitrary impairment of untainted,
probative evidence from nonaccomplices and thereby promotes the basic objective of the justice
system-the search for the truth.

 In his second point of error, Jester argues the evidence is legally insufficient to support the
guilty verdict, and the trial court therefore erred by overruling his motion for an instructed verdict. 
Jester's argument on this point is based on Bradford being an accomplice as a matter of law and his
testimony being insufficiently corroborated. Because Bradford was not an accomplice as a matter
of law, and because there is sufficient evidence to support the verdict, we overrule Jester's contention
on this issue.

 A challenge to the trial court's ruling on a motion for instructed verdict is in actuality a
challenge to the legal sufficiency of the evidence to support the verdict. Cook v. State, 858 S.W.2d
467, 470 (Tex. Crim. App. 1993). In reviewing a legal sufficiency challenge, we view the entire
body of evidence in the light most favorable to the prosecution and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Williams v. State, 937
S.W.2d 479, 482-83 (Tex. Crim. App. 1996).

 Jester argues that under Cook Bradford's testimony must be excluded from consideration in
evaluating the sufficiency of the evidence. See Cook v. State, 858 S.W.2d at 470. This position is
incorrect. As was shown above, Bradford was not an accomplice as a matter of law. Whether
Bradford was an accomplice in fact was an issue for the jury to decide, but was not submitted as a
separate special issue. The jury returned a general verdict of guilty. Therefore, we do not know
whether the jury found Bradford to be an accomplice. As shown above, there is adequate evidence
in the record to support a finding that Bradford was not an accomplice. We need not inquire as to
the jury's finding on this issue, however, as Bradford's testimony is sufficiently corroborated even
if Bradford was an accomplice. See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon Supp. 2001).

 There is sufficient corroboration if, disregarding Bradford's testimony, there is other evidence
that tends to connect Jester to the crime. See Tex. Code Crim. Proc. Ann. art. 38.14. The
corroboration is insufficient if it merely shows the commission of the offense, but the fact that the
crime was committed is a factor to be considered along with other factors in determining whether
there is sufficient independent evidence to corroborate the accomplice witness's testimony. Reed v.
State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). Corroboration need not directly link the
accused to the crime or be sufficient in itself to establish guilt. Even seemingly insignificant
circumstances may be sufficiently corroborating provided they tend to connect the defendant with
the offense. 

 Other evidence, unconnected to Bradford, showed that Jester had stolen guns from Howell,
that Jester and Howell had argued about this matter, and that Howell feared that he was in danger
from Jester. Several witnesses testified to admissions by Jester that he had taken the guns, and that
if Howell continued to "mess with" him, Jester would kill him. This evidence sufficiently connects
Jester to the crime to corroborate Bradford's testimony. Bradford's testimony placed Jester at the
scene at the time of Howell's death, with a shotgun in his hand. Bradford heard a shot fired, and later
saw Jester first hiding, then disposing of, the same gun. Other evidence showed that Howell was
killed by a shotgun blast. Viewing the evidence in the light most favorable to the verdict, there is
sufficient evidence to support the jury's guilty verdict. See Williams v. State, 937 S.W.2d at 482-83. 

 Finally, Jester argues that the deadly weapon finding should be stricken from the judgment
because the evidence is insufficient to support the entry of an affirmative finding of the use of a
deadly weapon. Jester also bases this argument on Bradford's status as an accomplice as a matter
of law and on the need for corroboration. At oral argument, Jester abandoned this point in light of
the decision of the Court of Criminal Appeals in Vasquez v. State, where the Court held that the
corroboration requirements of Article 38.14 are inapplicable to the testimonies of accomplice
witnesses regarding the use or exhibition of a deadly weapon. Vasquez v. State, No. 1573-00, 2001
Tex. Crim. App. LEXIS 67, at *6 (Tex. Crim. App. Sept. 12, 2001). 

 For the reasons stated, we affirm the judgment.


 William J. Cornelius

 Chief Justice


Date Submitted: October 24, 2001

Date Decided: November 28, 2001


Publish
1. Bradford was granted immunity on unrelated charges, but was also granted transactional
immunity for the case in which he agreed to testify.